Our next case this morning is Brock Industrial v. Laborers' International Union. Mr. Koffner. Good morning, Your Honors. Paul Kogenauer on behalf of the plaintiff appellant Brock Industrial Services. We ask this court to reverse the decision of the district court that denied Brock's motion to vacate the April 14, 2016 decision of the National Maintenance Agreements Subcommittee and set that decision aside. Alternatively, we are asking this court to deny the laborers' request to enforce that decision. This court's review is de novo because the question before this court is one of arbitrability. In particular, whether or not the subcommittee had arbitration authority over this particular matter. We submit that it did not because it involved a work jurisdictional dispute, which required tripartite arbitration under the party's agreement. Counsel, can I ask you a question about our jurisdiction? I find the procedural history of this case pretty muddled. Yes. And it seems to me that laborers asserted a counterclaim, this thing that was also then denominated as a motion to enforce the arbitration agreement or the arbitration judgment. I didn't see any final judgment resolving that counterclaim. You know, laborers have appealed from it. If that claim wasn't resolved, if that's still outstanding, then there's not a final judgment from which you can appeal. Because absent a 54B certification allowing some to go forward, all the claims have to be wrapped up. So do you have some light you can shed on exactly what this counterclaim is that seems to be lurking? Well, I think, Your Honor, that in its initial decision, the district court denied that motion to enforce. But not in a final judgment. The motion to enforce, basically, she seemed to wrap it up in the summary judgment motion and say there were still issues of material fact. There was certainly no separate document entered with a judgment on that. I'm just not clear. It's a bit confusing because it was denominated a motion to enforce, but laborers characterized it as a counterclaim, and it was initially a counterclaim. It is a bit confusing. My understanding was that because the district court had denied that motion to enforce, that that was a final order. And I understand you're saying there's not a separate order, and I think that's correct, other than the second order, which was the memorandum or denying our request for reconsideration and granting summary judgment. I'm not sure I cleared your question. Okay. Yeah, I don't know. I mean, it's very murky. Well, I think the district court said the same thing. There were three separate motions the laborers filed to dismiss and to strike our motion and to enforce. But I do think we're entitled to be here to appeal, understanding the court's point, the denial of our motion to vacate or our petition to vacate. There is a line in the district judge's conclusion in the final decision that she issued saying that she finds the April 14th, 2016 decision by the GRS, which is the Grievance Review Subcommittee, enforceable. So she's making a declaration that that decision is enforceable, which seems to direct itself at the motion to enforce, even though it's not explicit about that, and then directs the entry of judgment in favor of the union. Is that enough? Well, I would say that's not enough, but I guess you're saying is it enough to make it a final order? Right, wrapping everything up. Right. Your Honors, I have to confess I didn't study the procedural status as well as I should have. I do recall that comment by the court, the district court. I was somewhat surprised by the result, that we had a decision on the one hand granting summary judgment, but on the other hand not specifically addressing the request of the laborers to enforce. Whether that statement alone is enough, I have not agreed. The problem is that laborers seem to think that it went against them, even though if that was the final judgment finding that it was enforceable, then there's no reason for laborers to be here appealing, asking us to resolve a cross-appeal on the point, if the judgment was all in their favor. When they counter-appealed or cross-appealed, that was a surprise to us, and we looked long and hard at whether they had the ability to do that and ultimately felt that they did have the ability because the court had not directly granted their motion, as we understood it, to enforce. I'm not, again, sure that that resolves the procedural dilemma that this court has. As far as the substantive issue, which we were before the court on, or at least we hope to be before the court on appropriately, it's fairly straightforward. We continue to believe it's fairly straightforward, and the test of this court through William Charles Construction Company is fairly straightforward. Was the grievance and was the decision based exclusively upon a clause that concerned jurisdiction, or was it based instead on a separate independent clause apart from the work jurisdictional clauses? And, of course, we believe that Article I, Section 5, upon which the decision was based, and Article I, upon which the grievance was based, are both exclusively concerning jurisdiction, has no life apart from the jurisdictional issue, and although it perhaps could have been brought separately as a wrongful termination claim, it was not. And the laborers have come before this court and said, the one clause in the contract, Article 23, that covers wrongful termination, we disclaim reliance on it, and we have no rights under it. So they have said to this court they don't proceed under that clause, which covers the subject of wrongful termination and layoff, and they've acknowledged they proceeded under Article I. They've raised Article II, which they've never raised before in the lower court, and which has nothing to do with wrongful termination. So the case really has to be decided on Article I, Section 5, and is that or is that not separate from the jurisdictional dispute provisions of the contract? And we say it is not. Can I ask you another question about that language? So the language that says, you know, except I'm reading from Article VI, Section 1, when it says except for jurisdictional disputes and those involving general wage rates, all disputes and grievances arising out of work performed under this agreement involving the meaning and interpretation of any provision in this agreement, could that language itself be understood to be giving the arbitrator the decision to decide whether it has jurisdiction, the jurisdiction to decide whether it has jurisdiction? I mean, the Ninth Circuit has said that. There's this Huber-Hunt case where the Ninth Circuit has said the jurisdiction to decide, which is true in the federal context too, you know, the authority to decide whether one has the authority to act is separate and apart from resolving a question that is indeed outside of your jurisdiction. So understood that way, one might say that, well, we can understand this decision to be within the arbitrator's authority because it had the decision to decide whether there was jurisdiction or not. And I'm glad the Court raised that question. We looked at that from the Seventh Circuit's perspective, and I did not see any case law addressing that point. I'm not familiar with the Ninth Circuit case. I didn't see any in the Seventh Circuit either. Right. So from our perspective, the law was fairly straightforward, that the decision on arbitrability was for the Court in the first instance to decide. But that would be part of the agreement, right? It's not giving arbitrability. I won't even try to say it without having to be a tongue twister. But that would be enforcing the agreement as written. If the agreement itself, if the language of the agreement gave that decision, then we would be saying, well, the agreement by its own terms gave the arbitrator the authority to decide whether there was authority to adjudicate. I don't know that that language goes as far as that, in my view. And I also note that that language, first of all, of course, excludes jurisdictional disputes, which we say this is. And there's no dispute that there is a jurisdictional dispute. Laborers agreed, the District Court agreed, and even the Grievance Review Subcommittee. So everybody agreed. The question is, can you parse out from that dispute the separate wrongful termination claim or whatever the claim is, work assignment claim? And we, of course, say to this Court you cannot. There are two sides to the same coin, right? There is two sides to the same coin, understood. But so the Court has to say, is this more of a Hutter case or a Miron case where there was a separate subcontracting clause that was breached? Or is it more of a Helga Steele case or a William Charles case where there was only a work jurisdictional clause involved? And clearly, in our view, it's Helga Steele and it's a William Charles case. The only issue before the Court, and the only way that sentence had life, that work shall continue as originally assigned, is in the context of a work dispute, a work jurisdictional dispute. The District Court, I think, erred when it said, well, look, this also talks about lockouts and it talks about strikes. And those things wouldn't have to be decided in the jurisdictional realm. But those things are covered separately, just as wrongful termination is in the contract. There are separate clauses that could be brought, or claims that could be brought, based on separate non-jurisdictional clauses for work stoppages, for strikes, for lockouts, and for wrongful termination. But they did not do that. They did not bring their case under Article 23, which is a separate clause. And let's face it, the Grievance Review Subcommittee, it noted that Brock raised that issue, but it completely ignored it. It said nothing about whether there was proper cause, or more importantly in this case, a layoff, which is permitted for lack of work, or other legitimate reasons. It did not go there. It strictly decided a part of the jurisdictional issue. It strictly looked at that one component, which was jurisdictional in nature, and then said, run off, folks, and go to the tripartite commission, which the parties did not do. But the bottom line is, and it's a practical, it's a real practical effect for the parties, had that been done, had the laborers pursued the jurisdictional claim that they raised with the carpenters, that was presented by this issue, it all would have been done after 15 days. I mean, there's an expedited procedure for a reason, that any dispute of that sort get dealt with immediately, and the parties can move on. And the laborers ignored that, and they sought a monetary remedy. They're here for that, I would say, and not to resolve the genuine issue, which is the jurisdictional issue. Well, properly defining the boundaries of a jurisdictional claim has great practical significance for the employer, because of the dispute between, it's not just a bilateral dispute, obviously. It involves two competing unions who want the same work. Right. You know, bright lines are kind of important here, rather than fuzzy rules about how you can tease out some sort of independent claim that falls under the normal grievance procedure, as opposed to the tripartite jurisdictional dispute procedure. What's the best way to state the bright line rule here? Well, I thought William, I think William Charles does that. Does the clause, which was at issue, explicitly concern jurisdiction? Yes, it does. And I thought the district court tried to parse that out, but it is only, there's two sentences to that clause, two sentences, and they both explicitly concern jurisdiction. During the existence of the agreement, there should be no strikes, lockouts, work stoppages, or picketing arising out of any jurisdictional dispute. Work will continue as originally assigned, pending resolution of the dispute, the dispute being the jurisdictional dispute. So I agree with what the court just said. I think there is a bright line. The bright line is, does the clause explicitly concern jurisdiction? If so, then it has to go through tripartite. Or, as in Hutter and Muran, is there a separate contractual basis for that claim? Which were mostly subcontracting claims. They mostly arose out of that context. And the court said, look, we're not going to force a subcontracting claim into tripartite arbitration. That's a separate breach. There's no separate breaching. I think I have to address briefly the issue that the court raised at the outset. Not the procedural aspect, but the claim for enforcement. We do alternatively argue to this court that if it finds the case was arbitrable, that it nevertheless declined to enforce the decision because it did not draw its essence from the contract. And I certainly understand and know that, in essence, that's disfavor. When there is arbitrability, courts will find the decision, as long as it drew its essence from the contract, to be enforceable. But here we have argued for basically the same reasons, that it clearly doesn't. Even if arbitrable, as interpreted by the district court and as interpreted by the laborers, this decision did not draw its essence from the collective bargaining agreement because it completely ignored Article 23, which is the one and only clause that addresses the issue of wrongful termination or layoff. Completely ignored it. And so there can be no, it did not draw its essence from the collective bargaining agreement in that regard. So we would submit that even if the court finds this matter to be arbitrable, it should decline to enforce the decision of the grievance review subcommittee, as interpreted by the district court and the laborers. And I would, at that point, preserve any other time for rebuttal unless there are further questions. Thank you. Thank you. Mr. Coffold. Good morning, Your Honors. May it please the Court and my esteemed counsel. My name is Kevin Coffold. I represent local laborers union 100, East St. Louis, Illinois. This case starts from the Southern District of Illinois and Judge Janet Rosenstengel's decision. Since we have a muddled record, Your Honor, it is very complex. The pleadings are not that easy. Many times with labor cases, this happens. I do labor all the time. This is the third time in my career. I'm on the oral argument circuit for this circuit court, for this district court, and all three times were labor cases. Many times you will have situations where there is a complex factual scenario, and in this case we have that, except it is relatively simple at its core. You have contract issues and you have jurisdiction issues all popping up. You have carpenters union, you have laborers union, you have a whole cast of characters, and you have Brock that's sitting out there as the employer. Let me address the cross-claim first because that's the muddle on this, Your Honor. Since you went right out of the box on that, I thought I might. No, I appreciate that. I was going to ask you if you didn't raise it. I was going to get to it at the very end because it's the small fry, but you asked for it. Well, it's not small fry because if there is not a final judgment, we don't decide this case. Exactly right. Since your comments, it becomes the large fry. I did file motions to strike and counterclaims and a motion to enforce during the pendency of this case, while my esteemed counsel filed motions to vacate. So we had competing motions. We had two competing motions, a motion to vacate the award that he filed. It was essentially the complaint that he filed. I then filed a motion to enforce. Along the way, Judge Rosenstengel denied the motion to enforce. Didn't you initially file it as a counterclaim? Yeah. And then she said, no, call it a motion to enforce. That's right. So you submitted the same document. I submitted the same document. Exactly right. Now, the case law, and I cite that in one of my last briefs, the case law says that the title doesn't really much matter. It's what the substance of the motion is that matters. So we have a counterclaim. So where's the final judgment? So we essentially have a counterclaim or a motion to enforce. She denied that along with the motion to vacate in the same order. It was order number 37. They then appealed it. It was interlocutor at that point. They did not appeal it until after summary judgment. All right. So she denied the motion to vacate and the motion to dismiss. But she denied it because she said she was treating it under the summary judgment standard and there remained disputed issues of facts. And there were disputed facts. That's not a final resolution. Correct. There's disputed facts. And in particular, she did not have a resolution in her own mind as to whether there was work performed by the laborers under the direction of 2016. So that's really the only reason why my motion was dismissed. It was an outstanding fact, according to her. The arbitration clearly decided that. And that was not really an issue in the complaint itself on page 66 through 68. There was allegations, a series of allegations in which there was no real dispute that the laborers did perform work on January 8th, 2016. But, counsel, as Judge Sykes pointed out, the final judgment does say this arbitration work was enforceable, but that was in your favor. That's right. So you can't be appealing from that. What happened to your counterclaim? All right. She never reversed, never ruled really on a counterclaim as such. She only ruled on the motion, my motion, to enforce. She denied that on the limited question of there was a fact outstanding. When I pointed out to her, then I filed my motion for summary judgment. I pointed out to her in the summary judgment that that fact really is not outstanding. The complaint states that as a fact. There was no outstanding dispute of that in the arbitration. It was well established that work was performed by the laborers on January 8th, 2016, and we were terminated that day. At that point, she then ruled in favor of summary judgment on my motion. She ruled in my favor, but she never specifically reversed the motion to deny the enforcement. That's not necessary if she's ruling in your favor. She doesn't have to say I'm reversing myself. That's what she's doing, so you don't have anything to appeal from on a cross-appeal. I'm sorry. I'm sorry. I always go ahead if you're the questioner. Right. I mean, my point is that you won. Yeah. Well, I did win a summary judgment, but she didn't say how it was going to be enforced, under what conditions, or whether the motion was going to be reversed, her prior motion. She just ruled in my favor on summary judgment. In dicta, in the last paragraph, and you cited it in the other argument, she said it is enforceable. I don't think that's dicta. That's what she's saying in her conclusion. It's not explained. It doesn't really say how it's enforceable and doesn't actually say that her prior motion that was denied is now reversed. So I was going to file another motion to actually start calculating damages and to start putting them back to work. I mean, we won the summary judgment. And the arbitration award said they should be back. They should be at work. They were terminated January 8th. So I was going to file. But then my esteemed counsel filed the appeal under Order 37. So I thought the most prudent, most conservative, most safe thing, I still am looking at a motion that was denied to enforce that never has been technically reversed. So at that point, I was afraid Order 37 then went final, not only on the motion to vacate, but also on the motion to enforce. So, yeah, I won the summary judgment, Your Honor, but there is no order that says that I get to enforce. The only order that says enforcement was denied. I was just concerned that Order 37, the document 37, went final. And at that point, I needed to cross-claim. And that's what I did. Now, if your opinion of the order is that it is enforceable and that Order 37 is no longer in effect as to the motion to deny the enforcement, then fine, I would just seek instruction to the district court to enforce down below. With more specificity, they should be back to work. That's what happens on arbitration breaches. They should come back to work. That's never been done. I was going to do that. I was going to file the motion, but then the motion, that would have been mooted out because it was appealed here into this court. At that point, there's no jurisdiction. If you feel that this entire case is premature because we don't have a final decision as to enforcement, then fine, send it back. Well, it just seems to me either we don't have jurisdiction or you don't have a cross-appeal because either there's a final judgment and you won or there's a lingering conflict. I did win. There's no doubt. I did win. I was just concerned that since she never officially redid her motion, revoked her denial of the motion, that I was SOL if I did not appeal because I'm looking at a final order. Typical term. I'm just trying to be very conservative and cautious and safe, so I'm thinking, well, I'll just cross-appeal, and if I don't have to, then I don't have to. But if there would have been no appeal made by the Brock company, I would have gone back to her and asked for clarification and asked her basically how are we going to enforce. And I think essentially that's where we're going back down below. I'm just seeking on my cross-appeal to allow her to enforce with more specificity. So you'd really prefer just that we affirm. Yeah, just affirm with instructions to work out the enforcement down below. Basically reverse that Order 37 as to me, affirm the summary judgment, and with instructions to enforce the award. She did say she would enforce it, but it didn't say how, when, where, you know, when my laborers get an award in favor, they go back to work. That didn't happen here. It was appealed instead. So I was really afraid that I was SOL on Order 37 because she never officially revoked Order 37 as to my motion. She doesn't have to revoke it. Well, if that's your opinion, that's grand. She says throughout her final order that the arbitration award is enforceable. Judge, it's wonderful if that's your decision. Assuming the two of us, somebody else agrees. I'm sorry, Your Honor. I said her decision is appropriate as long as one or the other of us agrees. Well, that's exactly. All right, so I think we've fleshed through the whole cross-claim model. Now let me go back to the substance. If this case is appropriate here, either on the merits of Mr. Brock's appeal or upon my cross-appeal, I'd like to at least address a few minutes on the main issue. You mentioned a bright line. What is the bright line? In these cases where you have contract issues and you have jurisdiction issues all involved, all in one set of facts, how do you muddle that out? How do you sort that muddle out? Well, the case law is clear. There's a 7th District case from the Southern District in 1993. I cite it in the brief called Albarese v. Operating Engineer 520 from 1993. In that case, the bright line was did the arbitration award draw its essence from the contract provisions itself? That's just the standard of review. That's correct. That doesn't give us jurisdictional rules. Also, the Cutter case tries to sort out the jurisdiction versus the contract distinction by saying that there is substantial deference given to the arbitration award only if the wrongful termination is not independent of the underlying jurisdiction claim. So as long as the termination is independent of that jurisdiction claim, there's substantial deference given. The case law clearly sorts it out by asking whether there was a claim independent of the jurisdiction. In this case, there certainly was. The facts are pretty simple on this. Brock hired the laborers to do scaffold work. They were working in laborers' territorial and craft jurisdictions. They then terminated the laborers on January 8, 2016. They terminated. Brock terminated the laborers after working on January 8. They terminated. No cause given, no reason given. The carpenters union did not claim on a pre-job basis the jurisdiction. It was only a month later in February. The record has no indications of a competing jurisdiction claim by the carpenters until at least a month later in February of 2016. At the date of the termination, at the date of the termination of January 8, there was no jurisdiction claim pending by the carpenters. Subsequently, the carpenters did not perfect any jurisdiction claim that they made beginning in February of 16, Your Honors. They did not go over to the NLRB, which has a concurrent jurisdiction, to decide two competing jurisdiction claims between unions. They never filed that case. The laborers wrote a letter on January 11th complaining about the assignment to the work to the carpenters. Yes. So it's not that there was this big lag time. They knew that this work was going to the carpenters, and that's what they were complaining about. The scaffolding work traditionally was done on a 50-50 basis. The laborers and, for 10 years or more, the laborers and the carpenters had a 50-50 arrangement with agreement of all the employers. That was the standard practice in this area, in the St. Clair County, Madison County areas. So it was common to see both carpenters and laborers on the same job site doing scaffolding work inside this jurisdiction. It was well-established, well-worn. That's the way you have industrial peace. You avoid a jurisdiction dispute by divvying up the pie on a 50-50 basis, and that was what was done for a long time. You're describing a jurisdictional dispute. But at that point, Your Honor, on January 8th, our people were hired and then were fired. They were actually terminated by Brock without any reason given. And it was only then in February that the carpenters then claimed. At no point did the carpenters or the Brock or the laborers ever submit to a jurisdiction tripart arbitration. That process has not been done. The only thing that we did do was submit to the NMA arbitration process on a contract breach basis. The arbitration indicated that Article 1, Section 5 is breached. And at that point, you have status quo as of January 8, 2016. The facts are really quite simple in that regard. When my opposing counsel mentioned the Williams case, that case actually supports us. In that case, the Williams matter, there was a pre-job claim. Prior to hire, here there was no pre-job claim for 100% of the work by the carpenters. There was no pre-job claim. There was only a post-termination claim by the carpenters. Is that a prerequisite to a conclusion that this is a jurisdictional dispute? I don't think the cases require that. I'm sorry. I keep interrupting you. I apologize. I get so gung-ho. It's certainly a fact, Your Honor, that leads in the direction of sorting out this muddle. When you have both contract issues and jurisdiction issues, which one is going to predominate? And that's how the case law splits. If the jurisdiction claim was the primary dispute, then it becomes jurisdiction. If the contract claim existed first, like it did here, then that becomes primary, and the underlying jurisdiction claim is done later. Status quo in industrial peace would suggest that the work that was in place, I mean, Brock's the one that hired the laborers. The laborers didn't hire the laborers. Brock did. And then Brock fired the laborers on January 8th, far before the carpenters claimed the work in February of 2016. At that point, it's a contract dispute only. Status quo industrial peace should maintain that work assignment, essentially. That work, as of January 8th, should be maintained. Brock's the one that unilaterally did it without a carpenters claim to jurisdiction. At that point, Your Honors, it's a contract dispute, and there should be status quo until such time that an underlying tripart has been done. That's never been done. The carpenters hasn't sought it. So you can't have a tripart if you don't have a tripart. The carpenters have not sought out a tripart arbitration, and thus we still have a tripart. Well, that's because the carpenters were awarded the work. But who awarded them the work? No arbitration awarded them the work. The tripart has not been done. The employer did. Unilaterally, and there's an active dispute. Right, there's an active dispute about who gets this work, which is the definition of a jurisdictional dispute. But as of January 8th, they just terminated without any declaration of jurisdiction. It was only a month. I cited you a case, two cases, the Longshoreman cases in the brief, which clearly says that the employer cannot unilaterally create a jurisdictional dispute on his own. And that's exactly what went on here. That's exactly what went on here. There was no jurisdiction dispute until February. The employer terminated January 8th without reason given, and then they're claiming that that's a jurisdictional dispute. Actually, your client knew it was a jurisdictional dispute as of January 11th. That's what the letter talks about. But as of January 8th, there's no reasons given, and the carpenters don't claim the work until February. As far as the letter, there's a lot of surplus with business agents. They're going to claim whatever they can. It's clear that that arbitration was done on a breach of contract basis. Status quo should be maintained as of January 8th, until that arbitration was not a jurisdiction arbitration. There was no tripartite. The carpenters were not involved in that. They did not seek intervention in that. How could that have been a jurisdiction dispute mechanism resolution when the carpenters did not seek intervention and the carpenters were not involved in the arbitration? That could have only have been a contract dispute mechanism. So thank you, Your Honors, and thank you for your questions and trying to help me at least sort through the muddle of all these labor cases. Thank you. And you have a little bit of rebuttal time. I don't really have much to say, to be candid, other than to clarify counsel has, I think, misstated the record by repeatedly saying these workers were terminated or fired. The letter from Brock's counsel said they were laid off. The court acknowledged it was a layoff, and Labor's counsel in his brief has acknowledged it was a layoff, which is different and relevant, I think, only if, only if, you find the case to be arbitrable. Because then there is a distinction in Article 23 between the standard for evaluating wrongful termination and the standard for evaluating a layoff. So I only bring it to the court's attention not because I do think it's relevant, I don't. I think counsel's comments highlight the fact that this was a jurisdictional dispute from the get-go, that it is all about who should get the work, and the Carpenters, as this court noted, did provide the work, which is why they didn't challenge this further. I still don't know why the Laborers didn't. And had they done so in 15 days, this case would have been over. Unfortunately, we're here today. If there are no further questions, I'll end my comments. All right, thank you. Our thanks to both counsel. The case is taken under advisement.